# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

—o0o—

| | |
|---|---|
| WILLIE GEORGE ERWIN, JR., | ) 1:05-CV-00798 OWW JMD HC |
| Petitioner, | ) FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | ) |
| JEANNE WOODFORD, et al., | ) |
| Respondents. | ) |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This action has been referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72-302.

<u>PROCEDURAL HISTORY</u>

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, imposed on August 8, 2002. Following a jury trial, Petitioner was found guilty of first degree residential burglary (Cal. Penal

1

Code[1] §§ 459, 460 subd. (a)).  In addition, Petitioner admitted that he had previously been convicted of multiple "serious" felony (i.e. "strike") offenses (§§ 667(b)-(I), 1170.12(a)-(d)), that he had served a prior term of imprisonment as a result of his felony convictions (§ 667.5(b)), and that he had suffered a prior "serious felony" conviction (§ 667, subd. (a)).  Petitioner was sentenced to a term of twenty-five (25) years to life in state prison for the burglary conviction, plus five years for the "serious felony" prior conviction.  Petitioner was also ordered to pay a $10,000 restitution fine.

Thereafter, Petitioner timely appealed the judgment in his case to the California Court of Appeal, Third Appellate District ("Third DCA"), on August 15, 2002.  After briefing by the parties, on June 8, 2004, the Third DCA affirmed Petitioner's conviction and sentence.  Answer, Ex. 4 (Third DCA Op.)

On July 1, 2004, Petitioner's petition for rehearing was denied.  On August 25, 2004, Petitioner's petition for review to the California Supreme Court was denied.

On June 17, 2005, Petitioner filed the instant Petition for Writ of Habeas Corpus, and Traverse on July 5, 2005.[2]  Respondent filed its Answer to the Amended Petition on June 11, 2007.

## FACTUAL BACKGROUND

The Court adopts the facts as summarized by the Third DCA in its opinion dated June 8, 2004:

On the morning of November 15, 2001, Esther Lugo was in her bedroom resting when she heard noises in the house.  She looked up and saw [Petitioner] open the bedroom door and stick his head in. She pretended to sleep and when she heard [Petitioner] leave the house, she called 911. [Petitioner] exited the house through the back door and ran down the canal bank adjacent to the rear of the Lugo residence.  He was carrying a black backpack and a small black

---

[1] All further statutory references are to the California Penal Code unless otherwise noted.

[2] Petitioner's "Traverse" was filed on July 5, 2005, well before Respondent filed its Answer to the Petition.

1  case. Charles Stoll, a telephone employee, was working behind the residence and saw appellant
2  run down the alley.
3     There was evidence the residence had been entered through a bedroom window.
4  Distinctive shoe prints were found outside the window and along the canal bank. Missing from
5  the residence were three Sony PlayStation video games, a pair of sunglasses, and a set of
6  binoculars in a black case marked "C.C." in white (for Lugo's son, Carlos Castaneda, who lived
7  with Lugo). Castaneda reported there was a $2 bill in the binocular case.
8     When officers arrived, Lugo described the intruder as a Black male with a shaved head
9  and of short to average height. Stoll described the man he saw running as a Black man, late 30s,
10 grayish hair, bald, and approximately five feet seven to five feet eight inches tall. Stoll said the
11 man was wearing dark pants and a dark shirt with a white logo on the back. Based on these
12 descriptions, officers in the area were informed to be on the lookout for a Black male, wearing a
13 black T-shirt with a white logo and carrying a backpack. The broadcast was later updated,
14 describing the suspect as a Black adult male, bald or shaved head, light complexion, between
15 mid-20s and mid-30s.
16    As a result of the broadcasts, Fresno County Deputy Sheriff Joe Wahlenmaier stopped
17 [Petitioner], who was walking across a nearby intersection. [Petitioner] was wearing jeans and a
18 black T-shirt and was carrying a backpack. The officer told [Petitioner] that he matched the
19 description of a suspected burglar and asked what was in the backpack. [Petitioner] told him
20 video games and other "stuff." The officer asked if there were any weapons in the backpack and
21 [Petitioner] said no. When searched, the backpack contained numerous video games, various
22 toiletries, the items stolen from the Lugo residence (including a $2 bill), and a 12-inch knife.
23 [Petitioner] said he had just come from a friend's house, but could not give the officer a name or
24 address. He told the officer he was homeless and sold video games to make money. The officer
25 arrested [Petitioner] after discovering that [Petitioner] had two outstanding traffic warrants.
26    [Petitioner] was transported to the Lugo residence for an in-field identification. Lugo and
27 Stoll both positively identified [Petitioner] as the man they saw. Later, after asking what would
28 happen to [Petitioner] and expressing concern, Lugo said she was not "really sure" [Petitioner]

was the man. At trial, Lugo said [Petitioner] looked like the intruder but she was not certain. At trial, Stoll remained positive [Petitioner] was the man he saw running along the canal bank. Stoll testified that when he identified [Petitioner] at the Lugo residence, [Petitioner] had changed clothes and was wearing jean shorts and a white T-shirt.

At the time of arrest, [Petitioner] was also wearing a pair of shoes with a sole pattern matching the prints found underneath the window and along the canal bank. [Petitioner] offered no explanation as to how he acquired the stolen property. [Petitioner] was at the time of trial 41 years old with balding black and gray hair.

## DISCUSSION

I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d). Accordingly the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied*, 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after its enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II. Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C . § 2254(a).

The instant petition is reviewed under the provisions of the AEDPA. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, a petition for habeas corpus will not be granted unless the adjudication in question "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); *see* Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining "clearly established Federal law," the Court looks to the "holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; *see also* Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

This Court may not issue the writ simply because in its independent judgment the state court decision applied clearly established federal law erroneously or incorrectly; for a writ to issue, 'that application must also be unreasonable." Id. At 411. A federal habeas court making

the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable." Id. At 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, ninth circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th cir. 1999).

AEDPA requires that this court give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). Moreover, we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

Application of these standards is significantly impeded where, as here, the state court supplies no reasoned decision on some or all of a petitioner's claims. Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir.2000). Under such circumstances, the Court independently reviews the record to determine whether the state court clearly erred in its application of Supreme Court law. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.2000) ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law."); see also, e.g., Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir.2002).  That is, although the Court independently reviews the record, it still defers to the state court's ultimate decision.

III.  Review of Petitioner's Claims

    **A.    Claim One: Improper Sentencing**

In his first claim, Petitioner alleges that the state trial court improperly sentenced him to a harsher sentence because he exercised his constitutional right to go to trial, rather than to accept a plea bargain earlier in the proceedings. See Petn. at 6; Points and Authorities in Support of Petition ("P&A") at 2-8.

    1.    Factual Background

From the time he was apprehended up to the point at which the jury returned its guilty verdict, Petitioner denied that he had burglarized Ms. Lugo's residence. At sentencing, the trial court noted, "One of the things that happens when someone doesn't plead is they lose one of the mitigating factors that can be very important when it comes time for sentencing or even for a *Romero* motion,[3] and that is they didn't plead out at an early stage of the criminal proceedings." RT 737. Former Rule 423(b)(3) of the California Rules of Court provides that a sentencing court may consider as a circumstance in mitigation that "defendant voluntarily acknowledged wrongdoing prior to arrest or at an early stage of the criminal process."[4]

### 2. State Court Review

Petitioner's claim was first presented to the Third DCA, which denied said claim in a reasoned opinion. In rejecting Petitioner's claim, the Third DCA stated:

> The court acknowledged the mitigating factors argued by defense counsel, the lack of actual violence in [Petitioner's] past, his drug addiction and his family's comments about the support he provided them, but rejected these as justification for granting *Romero* relief. (*People v. Roe* (1983) 148 Cal.APp.3d 112, 119, 195 Cal.Rptr. 802 [court has always been free to weigh mitigating factors in terms of both quality and quantity].) Its reference to the failure to plead guilty was simply an observation that [Petitioner] had lost a mitigating factor which the law would otherwise allow a sentencing court to consider in making sentencing choices. (Cal. Rules of Court, rule 4.423(b)(3); *In re Lewallen* (1979) 23 Cal.3d 274, 281, 152 Cal.Rptr. 528 [under appropriate circumstances a defendant may receive a more severe sentence following trial than he would have received had he pleaded guilty].) We agree with respondent that a party attacking a sentencing decision bears the burden of showing the court relied upon an improper factor or made an arbitrary choice. (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 978.) Nothing in this record suggests that the trial court imposed a harsher sentence because [Petitioner] chose to go to trial. (*People v. Angus* (198) 114 Cal.APp.3d 973, 989-990, 171 Cal.Rptr. 5 ["(t)here must be some showing, properly before the appellate court, that the higher sentence was imposed as punishment for exercise of the right"].)

Third DCA Op. at 12-13.

///

---

[3] In People v. Superior Court (Romero), 13 Cal.4th 497 (1996), the California Supreme Court held a trial court may, "in furtherance of justice," dismiss an allegation or vacate a finding that a prior serious or violent felony conviction qualifies as a strike under California's Three Strikes law. Id. at 504.

[4] This rule has since been renumbered 4.423.

7

3.        Analysis of Petitioner's Claim

This claim essentially involves an interpretation of state sentencing law. "It is not the province of a federal habeas court to reexamine state court determinations on state law questions." Estelle v. McGuire, 502 U.S. 62, 67 (1991). The standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)." Id. So long as a state sentence "is not based on any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of state concern." Makal v. State of Arizona, 544 F.2d 1030, 1035 (9th Cir. 1976). Thus, "[a]bsent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." Christian v. Rhode, 41 F.3d 461, 469 (9th Cir .1994). The Ninth Circuit has specifically refused to consider state law errors in the application of state sentencing law. See, e.g., Brown v. Mayle, 283 F.3d 1019, 1040 (9th Cir. 20002), *vacated on other grounds*, Mayle v. Brown, 538 U.S. 901 (2003) (*Romero* claim "is not cognizable on federal habeas review").

We find that the trial court's decision not to grant *Romero* relief was not fundamentally unfair, and that the decision of the state courts is not contrary to nor an unreasonable application of settled Supreme Court precedent. The trial judge did not abuse its discretion in finding *Romero* relief was not warranted. Contrary to Petitioner's argument, the trial court did not state that Petitioner was required to plead guilty in order to obtain *Romero* relief. See Traverse at p. 3, *citing* United States v. Villasenor-Cesar, 114 F.3d 970, 975 (9th Cir. 1997). Rather, as the Third DCA notes, the trial court considered but ultimately rejected a number of mitigating factors such as Petitioner's lack of violence, his drug addiction, and his family's comments about the support he provided them. In addressing Petitioner's decision to assert his innocence at trial, the trial court simply noted that Petitioner's choice meant that early acknowledgment of guilt did not apply as a mitigating factor. Nothing in the record establishes that the trial court required a guilty plea in order to grant *Romero* relief. Nor does the record reflect that the trial court acted arbitrarily or capriciously. We find no support for the proposition that a decision not to grant

*Romero* relief amounts to punishing an individual for exercising his right to assert his innocence at trial.[5]  Accordingly, Petitioner's claim should be denied.

### B.      Claims Two and Three:  Cruel and Unusual Punishment

In his second and third claims, Petitioner asserts that his sentence under California's Three Strikes law is cruel and unusual (claim two) and grossly disproportional to his crime (claim three) and thus violates the Eighth Amendment's prohibition on excessive punishment. Petn. at 7-8; P&A at 8-11.  The state courts summarily denied Petitioner's claim.  Under California law, by denying his petition without issuing an order to show cause, the state appellate court decided that Petitioner had not made out a prima facie case for relief.  See People v. Duvall, 9 Cal.4th 464, 474 (1995) ("If no prima facie case for relief is stated, the court will summarily deny the petition.  If, however, the court finds the factual allegations, taken as true, establish a prima facie case for relief, the court will issue an OSC.").  Where, as here, the state court did not issue a reasoned denial of Petitioner's claim, We conduct an independent review of the record to determine whether the state court's decision was objectively unreasonable.  Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir. 2004); Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000).

#### 1.      Governing Legal Standard

A criminal sentence that is not proportionate to the crime for which a defendant is convicted may indeed violate the Eighth Amendment.  The Supreme Court recently decided two cases which discuss the clearly established federal law applicable to California Three Strikes cases.  See Ewing v. California, 538 U.S. 11 (2003); Lockyer v. Andrade, 538 U.S. 63 (2003).

In Andrade, the Supreme Court discussed the current state of Eighth Amendment proportionality review and held that the only clearly established governing legal principle is that a "gross disproportionality" review applies to criminal sentences for a term of years.  Id. at 73.

---

[5] Petitioner cites Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978) and Roberts v. United States., 445 U.S. 552 (1980) in support of his claim.  Petitioner's reliance on these cases is misplaced.  In Bordenkircher, the Supreme Court held that although a person should not be punished for exercising his right to assert his innocence at trial, it was not improper for the state to threaten a person with a more serious charge should he refuse a plea bargain.  Roberts holds that a federal trial court *can* properly consider a defendant's refusal to cooperate as one factor in imposing consecutive sentences.

Citing extensively to its past cases dealing with criminal sentencing and proportionality under the Eighth Amendment, the Court acknowledged that it has "not established a clear and consistent path for courts to follow." Id.

The Supreme Court held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' frame work is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Id. The Court analyzed Andrade's sentence under Rummel v. Estelle, 445 U.S. 263 (1980), Solem v. Helm, 463 U.S. 277 (1983) and Harmelin v. Michigan, 501 U.S. 957 (1991), and held that the state court "did not confron[t] a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrive at a result different from our precedent." Id. at 73-74. Using section 2254(d)(1)'s "unreasonable application" clause, the Court also held that it was not objectively unreasonable for the California Court of Appeal to conclude that the contours of the gross disproportionality principle permitted an affirmance of Andrade's Three Strikes sentence. Id. at 75-77.

In Ewing, the Supreme Court again reviewed the constitutionality of a Three Strikes sentence of 25 years to life for stealing three golf clubs. After reviewing the Court's Eighth Amendment jurisprudence, the Court chose to adopt Justice Kennedy's view [6] that:

> [There are] four principles of proportionality review-- the primacy of the legislature; the variety of legitimate penological schemes; the nature of our federal system; and, the requirement that proportionality be guided by objective factors– that inform the final one: The Eighth Amendment does not require strict proportionality between the crime and the sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.

Ewing, at 23.

Recognizing that state legislatures have a right to formulate penological schemes consistent with the state's policy goals and free from federal intrusion, the Court validated the California Three Strikes law, stating "[s]electing the sentencing rationales is generally a policy choice to be made by the state legislatures, not the federal courts." Id. at 25. The Court deferred

---

[6] As expressed in his concurring opinion in Harmelin v. Michigan, 501 U.S. 957, 1001 (1991)(citing Solem v. Helm, 463 U.S. 277, 288 (1983).

to the California Legislature's policy judgement to enact a tough recidivism statute and held that states have "a valid interest in deterring and segregating habitual criminals." Id. (*citing* Parke v. Raley, 506 U.S. 20, 27 (1992)).

In conducting a proportionality review of Ewing's sentence, the Court stated, "[i]n weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism." Id. at 29. The Court noted that "any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions." Id. In imposing a Three Strikes sentence on a recidivist criminal, the Court recognized the state's interest in dealing "in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." Id. (*citing* Rummel v. Estelle, 445 U.S. 263, 276 (1980)). Accordingly, proportionality review must take this interest into account. Id. The Court held that Ewing's sentence of 25 years to life was justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by Ewing's long, serious criminal record. Id.

In reviewing Petitioner's claim, this Court will begin with a brief overview of the Eighth Amendment jurisprudence and the proportionality standard. In Rummel, the Court upheld a life sentence imposed under a Texas recidivist statute for a defendant convicted of obtaining $120.75 by false pretenses, an offense normally punishable by imprisonment for two to ten years. Rummel, 445 U.S. at 266, 100 S.Ct. at 1135. However, because he had two prior felony convictions (for fraudulent use of a credit card and passing a forged check), and had served two prior prison terms, the prosecution chose to proceed under the state's recidivist statute, which carried a life sentence. Id. The Supreme Court held that Rummel's sentence of life imprisonment *with* the possibility of parole did not violate the Eighth Amendment. Id. at 265-266 (emphasis added). The Court noted that Rummel had suffered two separate convictions and terms of imprisonment for each prior, that he would be eligible for parole in twelve years, and that under the Texas recidivist statute, prosecutors retained the discretion not to invoke the statute for "petty" offenders. Id. at 278-81.

Three years later, the Supreme Court set forth the criteria for finding a sentence to be cruel and unusual punishment under the federal Constitution and affirmed a decision of the Eighth Circuit holding unconstitutional a sentence of life imprisonment without the possibility of parole for a seven-time nonviolent felony recidivist. Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001 (1983). Defining a three-part proportionality criteria, the Court concluded that Solem's sentence was grossly disproportionate to his crime of uttering a "no account" check for $100.00, even in light of his prior six nonviolent felony convictions: three for third degree burglary, one for obtaining money under false pretenses, one for grand larceny, and one for driving while intoxicated. Id. at 279-81. The Court emphasized that Solem's life sentence was far more severe than the sentence it had considered in Rummel, because Rummel was likely to be eligible for parole in twelve years, while Solem was given no possibility of parole at all. Id.

In Harmelin, the defendant received a mandatory sentence of life in prison *without* the possibility of parole for possession of more than 650 grams of cocaine, his first felony offense. 501 U.S. 957 (1991)(emphasis added). The Supreme Court upheld the sentence, with five justices agreeing, for varying reasons, that the sentence did not violate the Eighth Amendment. Although the Court did not produce a majority opinion, seven justices favored some manner of proportionality review. Justice Kennedy, joined by Justices O'Connor and Souter, stated that a noncapital sentence could violate the Eighth Amendment if it was "grossly disproportionate" to the crime, but concluded that courts need not examine the second and third factors of intrajurisdictional and interjurisdictional reviews discussed in Solem, unless "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Id. at 1005.

The majority of the justices in the Harmelin Court agreed that outside capital punishment, deeming a sentence cruel and unusual punishment is "exceedingly rare" due to the lack of objective guidelines for terms of imprisonment. 501 U.S. at 964. The threshold for such an inference of disproportionality is high. See id. at 1001 (Kennedy, J. concurring). Generally, so long as the sentence imposed by the state court does not exceed statutory maximums, the sentence will not be considered cruel and unusual punishment under the Eighth Amendment.

United States v. McDougherty, 920 F.2d 569, 576 (9th Cir. 1990).

The Harmelin Court concluded that the defendant's sentence did not meet the threshold factor of "gross disproportionality." Justice Kennedy stressed the serious nature of Harmelin's offense, stating that the offense "threatened to cause grave harm to society" unlike "the relatively minor, nonviolent crime at issue in Solem." Harmelin, 501 U.S. at 1002. Justice Kennedy further noted that the "possession, use, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population.'" and that the quantity of cocaine possessed by Harmelin had a potential yield of between 32,500, and 65,000 doses. Id.

### 2. Analysis of Petitioner's Claim

The state court's denial of Petitioner's Eighth Amendment claims was not objectively unreasonable. Petitioner's sentence of twenty-five years to life is not cruel and unusual and does not raise an inference of gross disproportionality to his crimes. Petitioner received a sentence of 25 years to life for having been convicted of first degree residential burglary, for having eight prior serious felonies and having served a separate term of imprisonment as a result of his felony convictions.

A 25-to-life sentence does not raise an inference of gross disproportionality to Petitioner's current crimes in light of his criminal history. See, e.g. Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680 (1991) (plurality opinion) (upholding sentence of life without possibility of parole for first offense of possession of 672 grams of cocaine); Hutto v. Davis, 454 U.S. 370, 370-71, 375, 102 S.Ct. 703 (1982) (rejecting challenge to a 40 year sentence for possession with intent to distribute less than nine ounces of marijuana); Rummel v. Estelle, 445 U.S. 263, 265-66, 100 S.Ct. 1133 (1980) (upholding a life sentence imposed under a recidivist statute where the three felonies were passing a forged $28.36 check, fraudulent use of a credit card to obtain $80.00 worth of goods and services, and obtaining $120.75 by false pretenses). Nothing about Petitioner's sentence is substantially different from the sentences upheld in Ewing and Andrade. As such, the Third DCA's denial of Petitioner's Eight Amendment claim was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). See, e.g., Lockyer, 538 U.S. at 76 (denying habeas claim that Three Strikes sentence of 50 years to life was

unconstitutionally disproportionate to conviction for two counts of shoplifting videotapes worth total of $153.54, where defendant had suffered three prior convictions for residential burglary). Accordingly, Petitioner is not entitled to habeas corpus relief on his Eighth Amendment claims.

### C.     Claim Four: Ineffective Assistance

In his final claim, Petitioner asserts that he was denied his right to adequate investigative assistance in preparing his case for trial. Petn. at 9. Petitioner alleges that his court-appointed investigator failed to assist Petitioner in obtaining evidence and witnesses necessary to defend against the charged offense. Id.

On February 13, 2002, after having been arraigned and entering a "not guilty" plea, Petitioner requested that he be allowed to proceed in propria persona. Clerk's Transcript on Appeal ("CT") at 66-67. Petitioner's request was granted on February 15, 2002. CT at 68-69.

Between February 15 and April 4, 2002, Petitioner submitted several motions, including a request to have Matthew J. Sharps, Ph.D., appointed as a "psychological consultant" (CT at 90-92) and a motion to have Drs. Sharps and Steven Nagelberg appointed as expert witnesses (CT at 134-37). On April 5 and 9, 2002, Petitioner filed several more motions, including a motion to suppress evidence (CT at 171-72) and appointment of an investigator (CT at 182-85).

In the instant claim, Petitioner alleges that because he was incarcerated while awaiting and during trial, he was unable to "effectively oversee the lacksadaisical efforts by the investigator appointed." Petn. at 9.

Analysis of Petitioner's Claim

To the extent Petitioner's claim that he was denied adequate investigative assistance asserts an error of state law, We lack jurisdiction to review such a claim. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("Federal habeas corpus relief does not lie for errors of state law."); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir.) (A petitioner may not "transform a state law issue into a federal one merely by asserting a violation of due process,"), cert. denied, 522 U.S. 881 (1997).

To the extent Petitioner alleges that the efforts of his court-appointed investigator

1  amounted to a violation of his Sixth Amendment right to counsel, Petitioner's claim is without
2  merit.  The Sixth Amendment guarantees that an individual accused of a crime is entitled "to
3  have the Assistance of Counsel for his defence." U.S. Const., amend. VI.  This is understood to
4  mean the effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).
5  An indigent defendant is entitled to an attorney at public expense.  Gideon v. Wainwright, 372
6  U.S. 335, 342-45 (1963); see also Powell v. Alabama, 287 U.S. 45, 71-73 (1932).

7        The right of an indigent defendant to the effective assistance of counsel includes the right
8  to hire experts and investigators at public expense, when their assistance is reasonably necessary
9  to prepare a defense.  Corenevsky v. Superior Court, 36 Cal.3d 307, 319-320 (1984); Anderson v.
10 Justice Court, 99 Cal.APp.3d 398, 401 (1979) ("The right to counsel includes the right to the use
11 of any experts that will assist counsel in preparing a defense"); see also Ake v. Oklahoma, 470
12 U.S. 68, 76 (1985) (federal constitutional entitlement to psychiatric expertise where defendant's
13 sanity likely to be at issue).  A defendant establishes an entitlement to such assistance by showing
14 that (1) he is indigent, and (2) the requested services are reasonably necessary to the preparation
15 of the defense.  Similarly, the Ninth Circuit has held that an incarcerated criminal defendant who
16 chooses to represent himself has a constitutional right to access law books or other tools to assist
17 him in preparing a defense.  Bribiesca v. Galaza, 215 F.3d 1015, 1020 (9th Cir. 2000), *quoting*
18 Milton v. Morris, 767 F.2d 1443, 1446 (9th Cir. 1985) ("An incarcerated defendant may not
19 meaningfully exercise his right to represent himself without access to law books, witnesses, or
20 other tools to prepare a defense.")

21       Petitioner does not claim that he was denied the assistance of a court-appointed
22 investigator.  Rather, he alleges that the investigator undertook "lacksadaisical efforts" on
23 Petitioner's behalf in preparing for trial. Petn. at 9.  However, Petitioner fails to point to any
24 evidence on the record that his investigator's efforts on his behalf were less than adequate.
25 Conclusory allegations do not warrant habeas relief. See Jones v. Gomez, 66 F.3d 199, 204-05
26 (9th Cir.1995) (holding that conclusory allegations made with no reference to the record or any
27 document do not merit habeas relief).  Accordingly, Petitioner's claim should be denied.
28 ///

///

## RECOMMENDATION

The Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED and the Clerk of the Court be DIRECTED to enter judgment.

These Findings and Recommendations are submitted to the United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Y1st, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    April 16, 2008**                                   **/s/ John M. Dixon**
                                                              UNITED STATES MAGISTRATE JUDGE

16